IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


LOREN MARK AMES,
      Petitioner,

vs.                               Case No. 3:08cv305/RV/EMT

WALTER A. McNEIL,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Doc. 17).  Petitioner filed a reply (Doc. 21).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 17, Exhibits).[1]  On March 13, 2001, Petitioner was indicted in the Circuit Court for Escambia County, Florida, for first degree premeditated murder with a weapon (Ex. A at 1–2).  The victim was his wife.  Following a jury trial, he was convicted of second degree

_____

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 17).

murder with a weapon (Ex. A at 113, Ex. B).  He was sentenced to life imprisonment, with pre-sentence jail credit of 370 days (Ex. A at 115–28, 134–38).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA").  Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (Ex. C).  Petitioner filed a pro se initial brief (Ex. G).  On October 4, 2004, the First DCA affirmed the judgment of conviction per curiam without written opinion (Ex. H).  Ames v. State, 886 So. 2d 228 (Fla. 1st DCA 2004) (Table).  Petitioner sought certiorari review by the United States Supreme Court (Ex. K).  The Court denied the petition for writ of certiorari on March 21, 2005 (Ex. L).

On March 1, 2006, Petitioner filed a pro se motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. M at 1–43).  Petitioner subsequently retained counsel, who supplemented Petitioner's motion with an additional claim (id. at 100–14).  The state circuit court held a limited evidentiary hearing (id. at 172–93).  On June 22, 2007, the circuit court denied Petitioner's Rule 3.850 motion (id. at 220–26).  Petitioner appealed the decision to the First DCA (Ex. N). On May 30, 2008, the First DCA affirmed per curiam without written opinion, with the mandate issuing July 29, 2008 (Exs. Q, R).  Ames v. State, 985 So. 2d 1094 (Fla. 1st DCA 2008) (Table).

Petitioner filed the instant federal habeas action on July 18, 2008 (Doc. 1).  Respondent concedes that the petition is timely (Doc. 17 at 32).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law

occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.     EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In

---

[3]Section 2254 provides, in pertinent part:

(b)(1)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
             (A)  the applicant has exhausted the remedies available in the courts of the State; or
             (B) (i)  there is an absence of available State corrective process; or
                    (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt. 459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)). The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law." Anderson, 459 U.S. at 7 (internal quotation marks omitted). The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. Id., 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can

---

[4] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366.

easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation""requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. *Id.* at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention

---

[5] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner. Ford v. Georgia, 498 U.S. 411, 424-25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250

F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    Ground One:  "Trial court erred in denying motion to suppress statements made by Mr. Ames while under influence of cocaine and the deputies' refusal to permit Mr. Ames to attend arraignment until statement given."

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

Petitioner states he is a diagnosed bipolar schizophrenic who self-medicated with more than $1,000.00 worth of cocaine only hours before he made his first statement to law enforcement (Doc. 1 at 4, supporting memorandum at 9–11). He additionally states law enforcement extracted a second statement from him by refusing to allow him to attend his arraignment until he provided a statement (*id.*). Petitioner contends the trial court erred in denying his motion to suppress both statements, on the grounds that he was not mentally able to waive his rights as to the first interrogation, and his second statement was coerced (*id.*).

As to the first part of Petitioner's claim, regarding Petitioner's cocaine use prior to his first statement to law enforcement, Respondent contends it cannot respond because Petitioner failed to properly present the issue to this court by virtue of his failure to include any argument related to this part of his claim in his petition (Doc. 17 at 33). As to the second part of Petitioner's claim, regarding coercion by law enforcement, Respondent contends Petitioner failed to exhaust it, because he did not reference federal authority or otherwise "federalize" this part of his claim in his pre-trial motion to suppress or his initial brief on direct appeal (*id.* at 35–36). Respondent further contends Petitioner cannot properly return to state court to present this aspect of his claim; therefore it is procedurally defaulted (*id.*). Respondent contends Petitioner has failed to show cause for the procedural default or that prejudice would result from this court's failure to review the claim; therefore, the claim is barred from federal review (*id.* at 36–38). Respondent additionally contends that even if this court deemed the claim exhausted, Petitioner has failed to show that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established Supreme Court law. Therefore, Petitioner is not entitled to habeas relief (*id.* at 38–42).

Upon review of the state court record, the undersigned concludes that Petitioner satisfied the exhaustion requirement as to both aspects of his claim by raising them in his pre-trial motion to suppress (Ex. A at 49–50) and presenting argument on both issues in his initial brief on direct appeal of his conviction (Ex. G at 3–15). Therefore, the undersigned will determine whether Petitioner has satisfied the standard for federal habeas relief set forth in § 2254(d).

      1.       Clearly Established Federal Law

The Supreme Court has held that a defendant's statement to authorities is voluntary if it is "the product of a rational intellect and a free will." <u>Mincey v. Arizona</u>, 437 U.S. 385, 398, 98 S. Ct. 2408, 2416, 57 L. Ed. 2d 290 (1978) (quoting <u>Blackburn v. Alabama</u>, 361 U.S. 199, 208, 80 S. Ct. 274, 280, 4 L. Ed. 2d 242 (1960)). The ultimate issue of voluntariness of a confession is a legal question requiring independent federal determination, not only when the claim is that police conduct was inherently coercive, but when interrogation techniques were improper only because, in the particular circumstances of the case, the confession is unlikely to have been the product of a free and rational will. *See* <u>Miller v. Fenton</u>, 474 U.S. 104, 110, 106 S. Ct. 445, 88 L. Ed. 2d 405 (1985). Subsidiary factual questions, such as whether a drug has the properties of a truth serum, *see* <u>Townsend v. Sain</u>, 372 U.S. 293, 306, 83 S. Ct. 445, 9 L. Ed. 2d 770 (1963), *overruled on other grounds by* <u>Keeney v. Tamayo-Reyes</u>, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), or whether in fact the police engaged in the intimidation tactics alleged by the defendant, *see* <u>LaVallee v. Delle Rose</u>, 410 U.S. 690, 693–95, 93 S. Ct. 1203, 35 L. Ed. 2d 637 (1973), are entitled to the § 2254(d) presumption. However, the ultimate question of whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination. <u>Miller</u>, 474 U.S. at 112.

    2.  Federal Review of State Court Decision

Petitioner raised both aspects of his claim in a pre-trial motion to suppress (Ex. A at 49–50). The trial court held a hearing, at which Petitioner and two law enforcement officers testified (*id.* at 53–85). At the suppression hearing, Petitioner testified that he had previously been diagnosed as a bipolar schizophrenic (*id.* at 58). He testified he was taking Haldol, Lithium, and Tegretol for his condition, but he had not actually taken his medication the day of the suppression hearing (*id.* at 56). Petitioner testified that at the time of his statements to law enforcement, on February 12 and 13, 2001, he had been prescribed Lithium, Tegretol, and Zoloft, but he had not taken his medication for over a month (*id.* at 57–58). Petitioner additionally testified that at approximately 5:30 p.m. on February 11, 2001, he began using cocaine, and had used nearly $1,000.00 worth of cocaine by the time he was arrested, at 8:30 p.m. on February 12 (*id.* at 56–57). Petitioner testified that when he gave his first statement to law enforcement, at 9:00 p.m. on February 12, he had last smoked cocaine

approximately 20–30 minutes prior and was so intoxicated that he did not understand (1) the rights he was waiving, (2) that his statement could be used against him, or (3) that he had the right to remain silent and request an attorney (*id.* at 58, 60). He testified that when he gave his second statement, on February 13, he was housed in the jail infirmary on "suicide watch" (*id.* at 59). He testified that when he was questioned on February 13, he did not know what time it was (*id.*). He stated that four or five times during the interrogation, a person knocked on the door and told the interrogating officers that Petitioner needed to go to his first appearance (*id.*). According to Petitioner, the interrogating officers told him "not to worry about it, that I wasn't going anywhere until they got done with me" (*id.*). Petitioner testified he did not know he would be appointed an attorney at the first appearance (*id.*).

Rodney Eddins, a sergeant with the Escambia County Sheriff's Office, testified that he came into contact with Petitioner on the night of February 12, 2001 (*id.* at 62). He testified that the Sheriff's Office had learned that Petitioner's wife had been found dead, and a BOLO (Be On the Look Out) alert was placed on Petitioner's vehicle (*id.* at 63–65). Eddins testified that the Sheriff's Office learned that Petitioner frequented a certain area of town, so he sent officers to that area (*id.* at 64). Officers located Petitioner's vehicle, but it was occupied by a black male and female, not Petitioner (*id.* at 63). Sergeant Eddins testified that he located Petitioner at a motel (*id.* at 66). A female opened the door of the motel room, and Eddins saw Petitioner sitting on a bed (*id.* at 63, 66). Eddins called Petitioner by name and asked him if he could speak with him (*id.*). Eddins testified that Petitioner walked outside the room, whereupon Eddins told him that police had stopped his vehicle, and he (Eddins) was attempting to determine whether the vehicle had been stolen (*id.* at 63). Eddins testified that when Petitioner walked outside the motel room, he did not have any problems walking; he did not stagger or stumble (*id.*). Petitioner asked Eddins if their encounter "had [anything] to do with his wife"; and Eddins indicated that it did not (*id.*). Eddins continued to let Petitioner talk, and Petitioner asked if his (Petitioner's) wife was all right (*id.*). Eddins told Petitioner she was fine, as far as he knew (*id.*). Eddins asked Petitioner when he last saw his wife, and Petitioner stated he saw her in the shower at 4:00 that afternoon (*id.*). Eddins testified he knew that Petitioner's wife was dead but did not tell Petitioner (*id.* at 65). Eddins testified that Petitioner voluntarily accompanied him to the Sheriff's Office in his patrol car (*id.* at 62–63, 71). Upon their

arrival at the Sheriff's Office, Eddins sat with Petitioner in an interview room (*id.* at 63). Eddins testified they were not speaking until he (Eddins) noticed Petitioner's eyes had welled up with tears, and Eddins stated, "I can see something is bothering you. Why don't you just tell me about it." (*id.* at 65). Petitioner stated he had become upset and done something horrible (*id.*). Eddins stopped Petitioner from speaking further and summoned Sergeant Shelby to the room (*id.* at 63, 65). Eddins testified that during his contact with Petitioner, Petitioner did not mention he suffered from any mental illness or that he was supposed to be taking antipsychotic medication (*id.* at 65). Eddins testified that Petitioner was "fine" (*id.*).

Rick Shelby, an investigator with the Sheriff's Office, testified he came into contact with Petitioner at the Sheriff's Office on February 12 (*id.* at 73–74). He testified that Petitioner did not appear to be intoxicated; and he had no trouble standing, walking, or talking (*id.* at 74). Petitioner appeared to understand who Shelby was and what he was doing, and his responses to Shelby's questions were appropriate (*id.*). Investigator Shelby testified that he knew that Petitioner had possibly been using crack cocaine (*id.* at 77). He testified that the motel where police located Petitioner was a place where crack cocaine was widely used (*id.* at 79). Shelby stated he asked Petitioner how much crack cocaine he had used and when he had used it, and Petitioner responded he had used $10 worth at least one hour prior to Sergeant Eddins' contacting him, which was 80–90 minutes prior to Shelby's questioning him (*id.* at 82). Shelby testified that based upon this training and experience as a narcotics investigator for ten (10) years, a high from crack cocaine lasted 15–30 minutes; but if a person was a common user, the high would not last even fifteen (15) minutes (*id.* at 82–83). Shelby testified that based upon his observations, Petitioner was not high during the interview (*id.* at 82). Shelby additionally testified that Petitioner told him he suffered from bipolar disorder, but Petitioner did not indicate that it was causing him any difficulties understanding or speaking with Shelby (*id.* at 74). He testified that Petitioner told him he had not taken his medication for three (3) days, and "from time to time" he would not take his medication (*id.* at 82). Shelby testified that he was aware that officers had found fourteen bottles of medication at Petitioner's home (*id.* at 81–82).

Investigator Shelby testified that he interviewed Petitioner again the next morning at the Escambia County Jail, prior to Petitioner's first appearance (*id.* at 75). Shelby testified that at 12:20

or 12:25 p.m., a correctional officer knocked on the door of the interview room and stated it was time for Petitioner to leave for his first appearance (*id.*). Shelby stated he was already concluding his interview at that time and knew that Petitioner had to leave (*id.* at 75–76). Shelby denied telling Petitioner that he could not go to his first appearance until Shelby finished his interview (*id.*). Shelby further testified that he did not recall an officer knocking on the door three or four times during this interview (*id.* at 83).

Investigator Shelby further testified that prior to taking Petitioner's recorded statements, he gave Petitioner Miranda[7] warnings, and Petitioner appeared to understand the warnings (*id.* at 75). Shelby testified that Petitioner agreed to speak to him without a lawyer present, and Petitioner signed a written waiver of his rights (*id.*). The trial record includes the written forms signed by Petitioner on February 12 and February 13, 2001, advising him of certain rights and acknowledging Petitioner's waiver of those rights (hereinafter "rights and waiver forms") (*see* Ex. B at 237–38; *see also* Ex. M at 219, 243). The rights and waiver forms advised Petitioner that he had the right to remain silent; anything he said could be used as evidence against him in court; he had the right to have a lawyer present while he was being questioned; if he could not afford to hire a lawyer, a lawyer would be appointed for him, without cost, prior to questioning; and if he wished to answer questions without a lawyer present, he would still have the right to stop answering questions at any time (*id.*). Immediately above Petitioner's signature on each form, the form states, "I have read the statement of my rights shown above and I understand what my rights are. No promises or threats have been made to me and no pressure of any kind has been used against me." (*id.*).

At the conclusion of the suppression hearing, the trial court found that Petitioner was not mentally or emotionally or physically disabled when he made the statements to Eddins and Shelby (Ex. A at 85). Additionally, in the trial court's written order denying the motion to suppress, the court found that in spite of Petitioner's mental illness and drug abuse, he was able to comprehend the Miranda warnings given by law enforcement (*id.* at 99). The court also found as fact that law enforcement did not engage in any improper conduct with respect to the taking of Petitioner's statements (*id.*). Based upon these findings, the state court concluded that Petitioner knowingly,

---

[7] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

intelligently, and voluntarily waived his <u>Miranda</u> rights; and his statements to law enforcement were freely and voluntarily given (*id.*).

Petitioner raised the suppression issue on direct appeal of his conviction (Ex. G at 3–15). The First DCA affirmed the trial court's decision (Ex. H). While the affirmance was a per curiam opinion without reasoning, this court presumes that the First DCA's decision affirms the reasoning, as well as the judgment of the lower court. "'Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'" <u>Sweet v. Sec'y Dept. of Corrs.</u>, 467 F.3d 1311, 1316–17 (11th Cir. 2006) (quoting <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991)); *see also* <u>Harmon v. Barton</u>, 894 F.2d 1268, 1273 (11th Cir. 1990) (noting that the "clear inference" to be drawn from a per curiam affirmance without written opinion is that the appellate court "accepted not only the judgment but the reasoning of the trial court.").

Most of the Supreme Court cases in which the court has found that a defendant's statement was given involuntarily involve affirmative coercion, even physical abuse, on the part of the interrogator. *See* <u>Mincey</u>, 437 U.S. at 401 (police officer interrogated defendant in hospital while defendant was under influence of drugs and in severe pain, and after defendant repeatedly requested attorney); <u>Townsend</u>, 372 U.S. at 308–09 (doctor at jail injected defendant with drug having effect of "truth serum"); <u>Blackburn</u>, 361 U.S. at 207 (evidence established "strongest probability" that defendant was insane and incompetent at time he allegedly confessed to robbery; confession was result of eight or nine hour sustained interrogation in tiny room, which was occasionally literally filled with police officers, in absence of defendant's friends, relatives, or legal counsel; and confession was composed by deputy sheriff); <u>Brown v. Mississippi</u>, 297 U.S. 278, 287, 56 S. Ct. 461, 465–66, 80 L. Ed. 682 (1936) (questioning voluntariness of confession where police officer interrogating defendant repeatedly whipped him and threatened to continue whipping him until he confessed).

In the instant case, however, the state court found as fact that law enforcement did not engage in any improper conduct with respect to the taking of Petitioner's statements; and Petitioner has failed to present clear and convincing evidence to rebut this finding. Therefore, this fact is presumed correct. Additionally, although Petitioner testified, in conclusory, one-word answers to

defense counsel's questions during the suppression hearing, that he was so intoxicated on February 12 that he did not understand his rights as described to him in the rights and waiver form,[8] there was no evidence that he still suffered from the same degree of intoxication more than twelve hours later, when he signed the second rights and waiver form on February 13, prior to giving his second statement. Moreover, the undersigned notes the absence of any evidence in the record that Petitioner was insane or incompetent when he spoke to law enforcement, or that his particular mental illness (even when left untreated for approximately one month) rendered him actually unable to comprehend the rights and advisories included in the rights and waiver forms, unable to appreciate the significance of providing statements to law enforcement, or unable to understand the consequences of waiving his rights.

In light of the evidence presented to the state court, Petitioner has failed to demonstrate that the state court's conclusions, that his statements to law enforcement were freely and voluntarily made, and that he knowingly, intelligently, and voluntarily waived his Miranda rights, were contrary to or an unreasonable application of clearly established Supreme Court law. *See* Grayson v. Thompson, 257 F.3d 1194, 1230 (11th Cir. 2001) (finding statements were given voluntarily despite defendant's intoxication); Miller v. Dugger, 838 F.2d 1530, 1538 (11th Cir. 1988) (finding

---

[8] The entirety of Petitioner's testimony regarding his understanding of his rights and waiver of those rights was the following:

> Q [by defense counsel]. Okay. When you gave your statement on February 12th at approximately 9:00, were you intoxicated on cocaine?
>
> A. Yes.
>
> Q. Okay. Did you understand what rights you were waiving on that date?
>
> A. No.
>
> Q. Okay. Did you understand that statement could be used against you later?
>
> A. No.
>
> Q. Okay. Did you understand you had the right to remain silent and request an attorney at that time?
>
> A. No.

(Ex. A at 58).

defendant's statements to be voluntary even though defendant was clinically insane when he gave them). Therefore, Petitioner is not entitled to federal habeas relief on this claim.

      B.    <u>Ground Two: "Mr. Ames denied right to effective assistance of counsel when counsel failed to move to suppress statements on ground of inadequate Miranda warnings."</u>

Petitioner contends his trial counsel was ineffective for failing to seek suppression of his statements to law enforcement on the ground that the <u>Miranda</u> warnings included in the rights and waiver forms were defective because they failed to advise him of his right to consult with counsel prior to questioning (Doc. 1 at 4, supporting memorandum at 12—18).

Respondent concedes Petitioner exhausted this claim by presenting it in his Rule 3.850 motion and his appeal of the state circuit court's denial of the motion (Doc. 17 at 44). Respondent contends Petitioner is not entitled to relief because he has failed to show that the state court's adjudication of the claim was contrary to or an unreasonable application of federal law (*id.* at 44–51).

      1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697. Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1279 (11th Cir. 2003); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly

deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial--for example, what witnesses he presented or did not present--were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" *Id.* (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

        2.      Federal Review of State Court Decision

Petitioner raised this issue in his supplemental Rule 3.850 motion (Ex. M at 101–11). At the limited evidentiary hearing on Petitioner's post-conviction claims, Petitioner's counsel and the State stipulated that Petitioner's trial counsel did not raise this particular issue in her motion to suppress (*id.* at 174–78). The parties presented oral and written argument on whether trial counsel's failure to raise the issue was deficient (*id.* at 177–90).

In the state circuit court's written decision denying the claim, the court correctly identified Strickland as setting forth the controlling legal standard (*id.* at 221–22). The state court found as fact that prior to Petitioner's questioning by law enforcement, he was presented with a written form apprising him of the following, in relevant part:

BEFORE WE ASK ANY QUESTIONS YOU MUST UNDERSTAND YOUR RIGHTS.

      1.      YOU HAVE THE RIGHT TO REMAIN SILENT.

2.      ANYTHING YOU SAY CAN BE USED AS EVIDENCE AGAINST YOU IN COURT.

3.      YOU HAVE THE RIGHT TO HAVE A LAWYER PRESENT WHILE BEING QUESTIONED.

4.      IF YOU CANNOT AFFORD TO HIRE A LAWYER, A LAWYER WILL BE APPOINTED FOR YOU, WITHOUT COST, BEFORE QUESTIONING.

5.      IF YOU WISH TO ANSWER QUESTIONS NOW WITHOUT A LAWYER PRESENT, YOU ILL (sic) STILL HAVE THE RIGHT TO STOP ANSWERING QUESTIONS AT ANY TIME.

(*id.* at 224–25).  The state court determined that the language of the warning fulfilled the substantive requirements of Miranda (*id.* at 225).  Consequently, Petitioner failed to demonstrate that defense counsel acted deficiently in failing to move to suppress Petitioner's statements on the ground that the warnings did not comply with Miranda (*id.*).  Petitioner appealed the circuit court's decision to the First DCA (Ex. N).  The First DCA affirmed the lower court without providing a written opinion (Ex. Q).

In Miranda, the Supreme Court held that an individual must be "clearly informed," prior to custodial questioning, that he has, among other rights, "the right to consult with a lawyer and to have the lawyer with him during interrogation."  384 U.S. at 471.  While the Supreme Court held that this warning is invariable, it has not dictated the words in which this essential information must be conveyed.  *See* California v. Prysock, 453 U.S. 355, 359, 101 S. Ct. 2806, 69 L. Ed. 2d 696 (1981) (per curiam) ("This Court has never indicated that the rigidity of Miranda extends to the precise formulation of the warnings given a criminal defendant.") (internal quotation marks omitted); Rhode Island v. Innis, 446 U.S. 291, 297, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980) (safeguards against self-incrimination include "Miranda warnings . . . or their equivalent").  In determining whether police officers adequately conveyed the warnings required by Miranda, the Court has stated that reviewing courts are not required to examine the words employed "as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by Miranda.'"  Duckworth v. Eagan, 492 U.S. 195, 203, 109 S. Ct. 2875, 106 L. Ed. 2d 166 (1989) (quoting Prysock, 453 U.S. at 361).

Both Prysock and Duckworth concerned a suspect's entitlement to adequate notification of the right to appointed counsel. In Prysock, an officer informed the suspect of, *inter alia*, his right to a lawyer's presence during questioning and his right to counsel appointed at no cost. 453 U.S. at 356–57. The Court of Appeals held that the advice did not adequately comply with Miranda because it lacked an express statement that the appointment of an attorney would occur prior to the impending interrogation. *See id.* at 358–59. The Supreme Court reversed. *Id.* at 362. "[N]othing in the warnings," the Court observed, "suggested any limitation on the right to the presence of appointed counsel different from the clearly conveyed rights to a lawyer in general, including the right to a lawyer before [the suspect is] questioned, . . . while [he is] being questioned, and all during the questioning." *Id.* at 360–61 (internal quotation marks omitted).

Similarly, in Duckworth, the Supreme Court upheld advice that, in relevant part, communicated the right to have an attorney present during the interrogation and the right to an appointed attorney, but also informed the suspect that the lawyer would be appointed "if and when [the suspect goes] to court." 492 U.S. 198 (emphasis deleted; internal quotation marks omitted). "The Court of Appeals thought th[e] 'if and when you go to court' language suggested that only those accused who can afford an attorney have the right to have one present before answering any questions." *Id.* at 203 (some internal quotation marks omitted). In disagreeing with the Court of Appeals, the Supreme Court noted that under the relevant case law, "counsel is appointed at [a] defendant's initial appearance in court." *Id.* at 204. The "if and when you go to court" advice, the Court stated, "simply anticipate[d]" a question the suspect might be expected to ask after receiving Miranda warnings, that is, "when [will he] obtain counsel." *Id.* Reading the "if and when" language together with the other information conveyed, the Court held that the warnings, "in their totality, satisfied Miranda." *Id.* at 205.

The Supreme Court recently reached the same conclusion in Florida v. Powell, — U.S. —, 130 S. Ct. 1195 (2010). In Powell, law enforcement officers informed Powell that he had "the right to talk to a lawyer before answering any of [their] questions" and "the right to use any of [his] rights at any time [he] want[ed] during th[e] interview." 130 S. Ct. at 1204–05. The Supreme Court determined that the first statement communicated that Powell could consult with a lawyer before answering any particular question, and the second statement confirmed that he could exercise that

right while the interrogation was underway. *Id.* at 1205. The Court held that, in combination, the two warnings reasonably conveyed Powell's right to have an attorney present, not only at the outset of the interrogation, but at all times. *Id.*

In the instant case, law enforcement officers informed Petitioner that (1) he had "the right to have a lawyer present while being questioned," (2) if he could not afford to hire a lawyer, one would be appointed for him "without cost, before questioning," and (3) if he wished to answer questions without a lawyer present, he had the right to stop answering questions at any time. The combination of these three warnings reasonably conveyed Petitioner's right to consult with a lawyer and to have the lawyer with him during interrogation, and that he maintained those rights even if he initially agreed to answer questions without consulting with a lawyer. Therefore, Petitioner failed to establish that defense counsel's failure to seek suppression of his statements on the ground that the warnings did not sufficiently advise him of the right to consult with an attorney prior to interrogation, was unreasonable. The state court's denial of Petitioner's ineffective assistance of counsel claim was, therefore, not contrary to or an unreasonable application of <u>Strickland</u>. Accordingly, Petitioner is not entitled to relief under § 2254(d).

## V. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>10</u><sup>th</sup> day of February 2011.


                              /s/ *Elizabeth M. Timothy*
                              **ELIZABETH M.  TIMOTHY**
                              **UNITED STATES MAGISTRATE JUDGE**



<u>**NOTICE TO THE PARTIES**</u>

        Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).